NATIONAL TUBE CO. v. SPANG, CHALFANT & CO.

(Circuit Court, W. D. Pennsylvania. September 12, 1904.)

No. 35.

1. PATENTS—INFRINGEMENT—APPARATUS FOR SKELPING OR TUBE WELDING.

The Simpson patent, No. 407,306, for apparatus for skelping or tube welding, claim 1, which covers a combination of a welding table pivoted at the rear end, provided with an endless traveling chain and skelping tongs having a hook to engage said chain, must be limited by each of the several elements claimed, especially in view of its amendment in the Patent Office. It is not infringed by an apparatus in which the tongs are of different construction from those shown in the specification and are not provided with a hook to engage the chain.

In Equity. Suit for infringement of letters patent No. 407,306, for apparatus for skelping or tube welding, granted to James A. Simpson, July 16, 1889. On final hearing.

Kay, Totten & Winter, for complainant.
Bakewell & Byrnes and William L. Pierce, for respondent.

BUFFINGTON, District Judge. This is a suit brought by the National Tube Company against Spang, Chalfant & Co. It charges infringement of the first claim of patent No. 407,306, granted July 16, 1889, to James A. Simpson, for an apparatus for skelping or tube welding. The pipe-making art to which it refers is quite

fully described in a case between the same parties reported in 125 Fed. 22. That case involved rear charging in a furnace of strips for making pipes; this one, drawing them from the furnace upon a pivoted table. After all is said, the case falls within narrow limits, and turns on the construction to be given the claim in suit.

The invention disclosed by Simpson consisted of a skelping or welding table pivoted at its rear end and adapted to swing at its front to several furnaces. On this table was mounted a pair of slide-joint tongs, devised by him, and adapted at one end to grip the heated strip in the furnace and at the other end engage a moving sprocket chain mounted on the table. In this way the strip was taken from the furnace, drawn through a skelping or welding die, and carried to the rear of the table. In his application as originally filed Simpson made three claims as follows:

"(1) A skelping or tube-welding table pivoted at one end, so as to be capable of horizontal oscillation, substantially as and for the purposes described.

"(2) A skelping or tube-welding table, provided with skelp drawing or tube-welding apparatus, and pivoted at one end, so as to be capable of horizontal oscillation, substantially as and for the purposes described.

"(3) Skelping tongs, consisting of arms united by a slide joint, one of the jaws being provided with a holding lug, substantially as and for the purposes described."

These in substance were, first, for a rear-pivoted table; second, for such a table provided with drawing apparatus; and, third, for the slide-joint tongs disclosed. The office, however, held that, in view of the English patent No. 4,201 of 1878, to Robertson, no invention was involved in claim 1, and that claims 2 and 3, being for tongs, must be made in a separate division. In this holding the patentee acquiesced, and amended his claim as follows:

"(1) A skelping or tube-welding table pivoted at one end, so as to be capable of horizontal oscillation, and provided with an endless traveling chain, combined with skelping tongs having a hook to engage said chain, substantially as and for the purposes described.

"(2) A skelping or tube-welding table pivoted at one end, so as to be capable of horizontal oscillation, and provided with an endless traveling chain, combined with skelping tongs, consisting of arms united by a slide joint, said joint having inclined faces, and a hook to engage the chain, substantially as and for the purposes described.

"(3) A skelping or tube-welding table pivoted at one end, so as to be capable of horizontal oscillation, and provided with an endless traveling chain, combined with skelping tongs, consisting of arms united by a slide joint, one of the arms being provided with a holding lug. and a hook to engage the chain, and to which hook the arms of the tongs are secured, substantially as and for the purposes described."

In so far, then, as the original claim of a rear-pivoted table was concerned, it will be seen that the patentee added two limitations, viz., an endless traveling chain and skelping tongs. Moreover, these skelping tongs had the superadded limitation of "having a hook to engage said chain."

It is contended that the term "skelping tongs" restricts it to a pair of tongs used in combination with the other elements of that claim for the purpose of skelping, and that, inasmuch as the respondents' device is used for butt welding, and not for skelping, it does not infringe. The view we take of the case does not require

us to so limit the claim, nor, indeed, do we think the fair meaning of the patent warrants such a narrow construction. The term "skelping tongs" was used, possibly inaptly, but nevertheless manifestly used, to describe tongs for either skelping or butt welding; for the body of the specification says:

"One of the methods of forming skelp iron or welding tubing is to draw the heated blank from the furnace through skelping or welding dies by means of skelping tongs." ·

Regarding the term "skelping tongs," of the claim, therefore, in the comprehensive sense given it in the specification, we next inquire as to the nature of the limitation upon such tongs in the claim. The specification makes this plain. It recites that to draw a strip from a furnace prior practice necessitated welding a tang thereto, and that the improved tongs disclosed in the patent dispensed with tangs, and were such as to grip directly on the end of the strip. Thus it is said:

"To obviate these objections, my improved tongs are constructed as follows: The tongs are composed of two bars, m, n, bent to the required shape. Instead of pivoting these bars together, a tapered slot, o, is formed in the bar, m, through which slot the bar, n, passes; the bar being tapered at this portion to correspond with the taper of the slot. On the inner face of the jaw portion of the bar, n, is a lug or projection, p. The ends of the arm, m, n, are pivoted to a hook, q, which hook is adapted to engage with the sprocket chain, c, and is provided with a handle, r. A similar handle is secured to the arm of the rod, m. By means of the hand, r, on the hook, q, the forward end of the hook may be raised or lowered, so that it shall act as a bell-crank lever on the arm, n, of the tongs, whereby the arm, n, is pushed forward in the slot, o, and the jaws of the tongs are opened. By moving the hook, q, in the opposite direction, the arm, n, is drawn back in the tapered slot, o, and the jaws of the tongs are opened. By moving the hook, q, in the opposite direction the arm, n, is drawn back in the tapered slot, o, whereby the jaws of the tongs are closed, so as to bite firmly on the blank. It will be noticed that, when the hook, q, is engaged with the sprocket chain, and the sprocket chain is in motion, power is applied directly to the arm, n, so as to hold the blank firmly during the drawing operation. Instead of welding a tang to the end of the blank, b, a hole, b', is punched or formed in the end of the blank, with which hole the lug, p, engages, so that when the hook, q, is engaged with the sprocket chain, and the chain is set in motion, the strain draws the jaws of the tongs together, and a firm hold is secured on the end of the blank; the lug, p, fitting in the hole, b'." ¦ '

It will thus be seen that not only are the tongs and hook integral, but they are so made for a functional purpose; that, when attached to the sprocket chain, the hook is adapted, through the medium of a bell-crank lever, to cause the slide joint of the tongs to clutch the strip. This mechanism is aptly described in the term "skelping tongs having a hook to engage said chain." Given this construction, all three claims cover different combinations; for the skelping tongs of the first have not the limitation of a "slide joint" with "inclined faces," which in that regard differentiates the second claim, or that of "one of the arms being provided with a holding lug," which in that regard differentiates the third. Moreover, it awards to the limitation of "having a hook to engage said chain" recognition and effect. It may be that the prior art was such that Simpson, in view of the meritorious character of his device, was

entitled to a claim for a rear-pivoted table alone. It may be that he was entitled to one for a table with a traveling chain and tongs without limitation. Be this as it may, the claim he obtained placed on the tongs the limitation of having a hook to engage the chain. Such being the case, the court cannot, particularly in view of the action of the Patent Office, construe the claim to cover tongs which do not embody this feature, and in substance broaden the claim to the scope of the rejected one.

The respondents' tongs are not the tongs of the claim. In the first place, the reins are pivoted together, a construction the patentee disclaimed—"instead of pivoting these bars together," etc. Gripping, therefore, results solely from bringing the handles together. Consequently their grip is not and cannot be increased by the draw of the attached sprocket chain. In respondents' device the two handles of different lengths are drawn together and fastened by a ring slipped from the long handle over the shorter one. The grip of the tongs is complete before attachment to the chain. Such attachment is made by a separate hook, which serves alone to couple the tongs and chain. When coupled, the moving chain simply serves to draw the already gripped strip, but does not grip the tong reins closer upon it. It will thus be seen that neither in form nor functional operation do the respondents' tongs include a hook, nor, when connection is made between them and the moving sprocket chain through the medium of a separate hook, does that hook combine with the tongs and the sprocket chain to effectuate the purpose of the patentee, "so that when the hook, q, is engaged with the sprocket chain, and the chain is set in motion, the strain draws the jaws of the tongs together."

The respondents having used a different mechanism and one operating in a different way to accomplish the same object, such method does not fall within the monopoly of the patent. Infringement not being shown, the bill must be dismissed.